Commonwealth ex rel., Appellant, *v.* Nelson-Pedley Construction Co. et al.

Argued February 3, 1931. Before FRAZER, C. J., WALLING, SIMPSON, KEPHART, SADLER, SCHAFFER and MAXEY, JJ.

*Wm. A. Schnader,* Attorney General, with him *Harris C. Arnold,* Assistant Deputy Attorney General, for appellant.—The basic rule of liability applicable to contracts of this kind imposes the loss upon the contractor: Murphy v. Bank, 184 Pa. 208; Chapman v. Water Power Co., 126 Fed. 372; Cramp v. Cent. R. Corp., 268 Pa. 14; Miller v. Hospital, 243 Pa. 502; Smith v. Faust, 92 Pa. Superior Ct. 267; Garman Bros. v. Hoover, 95 Pa. Superior Ct. 203.

The provisions of the contract do not render the basic rule inapplicable: Garman Bros. v. Hoover, 95 Pa. Superior Ct. 203.

The amending acts clearly have no bearing on the present controversy: Tompkins v. Dudley, 25 N. Y. 272; Weintrob's Est., 295 Pa. 374; Com. v. McFarland-Meade Co., 86 Pa. Superior Ct. 67.

*George Ross Hull,* of *Snyder, Miller & Hull,* with him *Morton Witkin* and *Frank Rogers Donahue, Robert F. Irwin, Jr.,* and *John B. Gest,* of *Donahue, Irwin, Merritt & Gest,* for appellees.—The contract between the parties placed the risk of loss by fire on the Commonwealth: Bubb v. Oil Co., 252 Pa. 26; McMillin v. Titus, 222 Pa. 500; Myers's Est., 238 Pa. 195; Nash v. Towne, 5 Wallace 689; Thatcher v. Ry., 35 Pa. Superior Ct. 615; Trexler v. Reynolds, 43 Pa. Superior Ct. 168; Knickerbocker T. Co. v. Ryan, 227 Pa. 245; Vulcanite Paving Co. v. Phila., 239 Pa. 524; Wilson v. Franklin, 282 Pa. 189; Duncan v. Pittsburgh-Florida F. G. A., 282 Pa. 498.

The strict rule of the common law which requires a contractor to rebuild in case of destruction by fire or other accident, is not applicable to this case for the contract is divisible and not entire, and the contractor has not unconditionally and absolutely agreed to erect, construct and deliver to the Commonwealth a completed building: Miller v. Homeopathic Hospital, 243 Pa. 502; Murphy v. Bank, 184 Pa. 208, 217; Cramp & Co. v. Realty Corp., 268 Pa. 14; McKinley v. C. Jutte & Co., 230 Pa. 122, 123; Hoy v. Holt, 91 Pa. 88, 92; Hand v. Baynes, 4 Wharton 203, 214; Smith v. Faust, 92 Pa. Superior Ct. 267; Garman Bros. v. Hoover, 95 Pa. Superior Ct. 203.

OPINION BY MR. JUSTICE SIMPSON, March 16, 1931:

The Nelson-Pedley Construction Company, Inc., one of the defendants, entered into a written agreement with

the Commonwealth to construct for the latter the first part of what is known as "South Office Building No. 2 in Capitol Park at Harrisburg." The other defendant is the surety for the completion of the contract; but no defense peculiar to the surety is alleged, and hence its agreement need not be considered. When the building was about eighty per cent finished, and was still in the possession of the contractor, a fire of unstated origin injured certain of the materials which had been set in place, and the ultimate question to be decided is whether the Commonwealth or the defendants must bear the loss thus occasioned. The court below, to whom the controversy was submitted in accordance with the Declaratory Judgments Act, decided in favor of defendants, and the Commonwealth thereupon prosecuted the present appeal. The declaratory judgment must be reversed.

In the court below and here, much time was spent in debating whether the construction contract is an entire or divisable one. We are clear that it is an entire contract, but do not care to discuss the question, since, no matter by what name it may be entitled, the rights of the parties are readily determinable from the language appearing in it. Where the validity of a cause of action or defense depends on the character of the contract in suit, that question must be decided in order to do justice between the parties; but where their respective rights, so far as they are at issue in the particular case, are governed by the written language of their contract, a statement of the class to which it belongs is of no moment,—the language controls. In this case, the contract says that the "Contractor agrees to......do and perform all labor, superintendence and all means of construction necessary to execute, construct and finish in an expeditious, substantial and workmanlike manner, the work necessary for the construction [of the building], all said work to be done in accordance with said plans and specifications and general conditions and other terms and conditions of this contract to the satis-

faction and acceptance of the department of property
and supplies of the Commonwealth......[and the]
Commonwealth agrees in consideration of the comple-
tion by contractor of the work contemplated in this
contract in strict accordance therewith to the satisfac-
tion and acceptance of said department of property and
supplies to pay to the contractor the sum of $3,430,000"
in monthly installments as the work progresses. Under
this language, the contractor must complete the work in
accordance with the plans and specifications, to the sat-
isfaction and acceptance of the department, for this it
has expressly agreed to do. Until it has done so, it has
not complied with its contract, though the building ad
interim has been damaged by fire; the cost of restora-
tion, in that event, being upon the contractor and not
upon the Commonwealth: Murphy v. Liberty Nat. Bank,
184 Pa. 208, 217; Cramp & Co. v. Central Realty Corp.,
268 Pa. 14, 20.

Another paragraph of the contract makes this con-
clusion particularly clear. It says: "The work in every
respect, from the execution of the contract bond and
during its progress until final acceptance, shall be under
the charge and in the care of the contractor and at his
risk. He shall properly safeguard against any and all
injury or damage to the public, [and] to any property,
material or thing, except when stipulated otherwise in
the specifications, and shall alone be responsible for any
damage or injury from his undertaking of this work to
any person or persons or thing connected therewith."
Defendants contend that the word "work" in the first
sentence of this paragraph "can refer only to the work
of construction, not to the thing constructed." Assum-
ing this, the sentence would then read: "The work [of
construction] in every respect, from the execution of the
contract bond and during its progress until final accept-
ance shall be under the charge and in the care of the
contractor and at his risk." If the work of construc-
tion is "in every respect" at the contractor's risk, until

its completion by him and its final acceptance by the department, then he must take the risk of anything happening to it until it is completed and accepted. This is emphasized by the next sentence which requires the contractor to "properly safeguard against any and all injury to the public [and] to any property, material or thing," and to "be responsible for any damage or injury from his undertaking of this work to any person or persons or *thing connected therewith.*" It follows that the contractor cannot escape its liability to the Commonwealth unless the latter was responsible for the fire, or in some way defaulted in its duty under the contract,— neither of which is pretended,—or unless there are other provisions in the contract so paramount and mandatory as to overcome wholly those above quoted, or unless there is some statute which is controlling. Under none of these heads can defendants find relief from liability.

So far as concerns the other provisions of the contract, defendants point to the fact that the building to be constructed is but a "part of South Office Building No. 2"; that certain kinds of work necessary to be done in order that it may be ready for actual occupancy and use as an office building, were excluded from the contract; that a percentage of the appraised value of the work actually done is to be paid monthly; and that the Commonwealth reserved the right to delay the performance, and perhaps to annul the contract, should "unforeseen causes" so require. It might be necessary to decide what inferences should be drawn from these provisions if defendants' liability itself depended on inferences, but, as it is based on express and positive language, they are of no moment whatever: Expressio unius est exclusio alterius, Broom's Legal Maxims *657. The contractor expressly agreed to complete the work specified; though it was but a part of the building ultimately to be constructed, and was but a part of that needed before its actual occupancy and use as an office building; though the work to be done was to be paid for

in the way stated; and though the contract contained the reserved rights referred to,—which were never exercised, however. Having expressly agreed to be liable *although* these several matters appeared in the contract, defendants cannot be heard to say they are not liable *because* of their appearance in it. This is an impossible contention, since it is, within itself, a contradiction in terms.

Up to this point, we are in accord with the court below, but have now "reached the parting of the ways." It held that, despite the foregoing, the Commonwealth could not recover because of section 31 of the general conditions of the contract (interpreted according to the rule of construction which says that, where the language of a contract is ambiguous, it must be construed most strongly against the party who drew it,—in this instance the Commonwealth), when considered in connection with the Insurance Fund Act of May 14, 1915, P. L. 524, as amended in immaterial particulars by the Acts of May 8, 1919, P. L. 157, and May 12, 1921, P. L. 549.

Perhaps it would not be difficult to show that the rule of construction above referred to cannot possibly have any applicability here. In 13 C. J. 545, citing a number of cases, it is said: "This rule......is the last one which the courts will apply, and then only if a satisfactory result cannot be reached by the other rules of construction. [It] is never applied......where the intention is clearly expressed...... Further, the language must be given a meaning in accord with the object in view." So, too, in 6 R. C. L. 854-5, it is said, on the authority of a number of cases: "It may be pointed out that contracts with the public appear to be an exception to this rule, such contracts being interpreted in favor of the public." This principle, which has back of it a wise public policy, would alone defeat defendants' contention on the point now under consideration. It suffices for present purposes, however, that there is not the slightest ambiguity in section 31, which provides

that "The contractor shall effect and maintain fire insurance on all materials delivered at the site, including all office fittings and fixtures, materials, tools and appliances in or adjacent thereto and intended for use therein, to their full insurable value. It will not be necessary for the contractor to maintain insurance on any material incorporated in the building."

"He who runs may read" and understand that clear and unambiguous language. The last sentence, which is the one upon which the entire argument is built, simply states that the contractor need not "maintain insurance on any material incorporated in the building." It does not refer to the building itself, but to materials incorporated in it, and says the contractor need not *maintain insurance* on them, although, before incorporation, such insurance was required. Neither the court below nor defendants point to any ambiguity in that language, but each seeks to draw therefrom the impossible inference that by it the Commonwealth herself in effect contracts to act as insurer for the benefit of the contractor; this being a necessary conclusion, since, as we have already pointed out, the contractor would otherwise be liable to make good any fire loss. Inferences, however, are not within the rule as to ambiguity, and those which would overthrow the positive language of a contract, as the present one would, are never permissible, especially where, as here, the meaning of the language is clear, and does not require the drawing of any inference to disclose its plain intent.

In relief of the contractor, the contract provides that the value of "all materials delivered [by the contractor] at the site," but not yet incorporated in the building, shall be estimated each month and a percentage of the estimate paid by the Commonwealth, to and in which the title to those materials shall then vest. Without this clause, the materials, while not affixed to the building, would have remained the property of the contractor: Ball Engineering Co. v. White & Co., 250 U. S.

46; Weintrob's Est., 295 Pa. 374. After the payment specified and before incorporation in the building, a fire might injure or destroy them, the surety for completion would not be liable for the resulting loss, and the Commonwealth probably desired for them additional security beyond that of the contractor alone. Hence the insurance clause as to unincorporated materials. For materials incorporated in the building, the Commonwealth had the bond for completion, as well as the personal responsibility of the contractor. Moreover, as the first clause was general in character, and did not expressly preclude the necessity for continuing the insurance on "materials delivered at the site" and thereafter incorporated in the building, it was necessary to exclude this possibility by the second sentence above quoted. Hence the provision that insurance was not required on such materials after incorporation. These considerations disclose ample reasons for the provisions quoted, but, whatever the reason, their insertion gives no aid to defendants.

Nor is there anything more substantial in the reference to the Insurance Fund Act of May 14, 1915, P. L. 524. The $1,000,000 directed by it to be accumulated is not an insurance fund at all; it is a fund accumulated to take the place of insurance in the instances to which the statute applies. The plan is not unique, but dates back at least as far as the days of Stephen Girard, for that great mariner had such a fund and paid into it the premiums he would have been obliged to pay if he had insured his numerous sea-going ships, and, when a vessel was lost, if he needed a new one, he paid for it out of that fund.

A careful reading of the Act of 1915 will show that it was not intended to apply to buildings in course of construction by an independent contractor. This is made clear by section 5 of the statute, which is as follows: "Whenever loss or damage by fire or other casualty shall occur to any structure, building, equipment, or other

property owned by the Commonwealth of Pennsylvania, the department, board of trustees, overseers, commissioners, or other branch of the state government having control or custody thereof, shall make report of such loss or damage to the superintendent of public grounds and buildings; setting forth specifically the use and character of the structure, building, equipment, or other property damaged or destroyed, the original cost thereof, the estimated amount of the loss or damage, and cost of restoration, rebuilding, or replacement, and such other data and information as may be required by the said superintendent of public grounds and buildings, who shall make such examination and investigation as may be necessary and report the result thereof to the board of commissioners of public grounds and buildings; whereupon the [latter] may, in its discretion, authorize the rebuilding, restoration, or replacement of the property damaged or destroyed; and, for that purpose, is hereby authorized to have plans and specifications prepared, and contracts executed, and to supervise the erection, construction, or replacement thereof, under the supervision of the superintendent of public grounds and buildings, or other duly authorized agent of the board of public grounds and buildings; such rebuilding, restoration, or replacement to be in substantial accord with the original character, use, and purpose of the property damaged or destroyed."

This language is inappropriate to a building still in course of construction. No "branch of the state government" has "control or custody" of it, while it is "under the charge and in the care of a contractor and at his risk"; there is, as yet, no "original cost" of such a building since it has not been paid for; there is no "cost [to the State] of restoration, rebuilding or replacement" of such an unfinished building, for that is entirely on the contractor; there is no necessity "to have plans and specifications prepared, and contracts executed" for it, for they are already prepared and executed; there is no

need for special arrangements to be made "to supervise the erection, construction and replacement" of such a building, for that is all covered by the contract for construction which is still in force; and there can be no "original......use......of the property damaged or destroyed," for it never had been used at all.

Defendants contend, however, that section 7 of the statute leads to a different conclusion, in that it says that no one connected with the state government shall "purchase, obtain, or secure any policy of insurance on any property owned by the Commonwealth, the term of which policy of insurance shall extend beyond the 31st day of December, A. D., 1920." Surely it requires no argument to show that this has nothing to do with the usual provisions in a building contract requiring the contractor to complete the building in accoradnce with the plans and specifications and in that condition to deliver it to the owner; nor to the provision relied on here that "It will not be necessary for the contractor to maintain insurance on any materials incorporated in the building." Hence, no insurance policy in favor of the Commonwealth was sought, nor was any insurance of the building even suggested. On the contrary, the contract expressly provides that no insurance on the incorporated materials was required. It is not necessary to decide whether or not, in view of the statute, the State had the right to require the contractor to maintain insurance on the materials delivered on the ground but not incorporated in the building, after the title to them had vested in the Commonwealth, for that inquiry is not pertinent to the issue here.

The decision in Newport News Shipbuilding & Drydock Co. v. United States, 34 Fed. (2d) 100, greatly relied on by defendants, does not help them. There plaintiff was not constructing a new vessel, but was making repairs to an old one. The original specifications required the contractor to insure the entire vessel while the work was being done, but this was eliminated, the

United States itself agreeing to "maintain the present hull, machinery and equipment insurance," and the bid was then reduced in the sum of $5,000. The question which arose was as to liability for the loss to the ship itself, entirely aside from the work contracted for, and the former was ten times the amount of the contractor's bid for the repair work. It was held that the contractor, under the above facts, should not be required to bear the loss. The suggestion that the Commonwealth inserted the insurance clause under consideration in order to induce the contractor to make a smaller bid than it otherwise would have done, is doubtless correct so far as relates to special insurance on incorporated materials; beyond that it is a pure petitio principii.

But above and beyond all else that we have said on this branch of the case, is the fact that the present liability has nothing whatever to do with matters of insurance; it does not expressly or by necessary implication depend on the presence or absence of provisions relating to insurance on the building while in course of construction. The contractor agreed to erect and deliver a building in accordance with specified plans and specifications. In this proceeding it is endeavoring to evade that liability because section 31 says: "It will not be necessary for the contractor to maintain insurance on any material incorporated in the building." From that sentence, it seeks to overthrow its express assumption of liability, by an unexpressed and unnecessary inference, and again we say: nothing can be inferred which is in direct violation of that which is clearly expressed, not only because of the maxim already quoted, but because also it cannot be assumed that repugnant or contradictory clauses were intended to be inserted in the contract: McMillin v. Titus, 222 Pa. 500, 502; Vulcanite Paving Co. v. Phila., 239 Pa. 524, 528.

The declaratory judgment of the court below is reversed, and it is now adjudged that the Nelson-Pedley Construction Company, Inc., is liable for all the loss

occasioned by the fire in that part of South Office Building No. 2, being erected by it; that, without further charge than the price specified in the contract, it must construct the building in strict compliance with its contract, and must deliver it to the Commonwealth as a fully completed structure, in the condition specified in the contract and to the satisfaction of the department of property and supplies of the Commonwealth; and it is further adjudged that if the Nelson-Pedley Construction Company, Inc., fails so to do, the Great American Indemnity Company is liable on its bond for completion, to the full extent that the Nelson-Pedley Construction Company, Inc., is hereby declared to be liable. The cost of these proceedings is to be paid by defendants.