## Henry Shenk Company v. Erie County et al., Appellants.

Argued March 26, 1935.   Before FRAZER, C. J., SIMP-SON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*S. A. Sisson,* for appellants.

*W. P. Gifford,* of *Gunnison, Fish, Gifford & Chapin,* for appellee.

OPINION BY MR. JUSTICE KEPHART, May 13, 1935:

The Commissioners of Erie County were directed, through proper proceedings, to remodel the old courthouse and enlarge it by adding a new wing. The general plans and specifications were approved, and, after due authorization, a contract was let October 4, 1928, for the general building and remodeling program to Henry Shenk Company for $400,000, to be completed within one year, or October 5, 1929. Shenk's contract did not include the outside facing and fixed office equipment, nor did it include plumbing, heating, electric wiring and ventilating necessary to complete the structure.

The specifications for the stone facing was approved by the court October 18, 1928, and on November 23d a contract was awarded by the commissioners to plaintiff. The court refused to approve this contract, and formally rejected it December 28th. After repeated efforts to secure suitable materials, a new contract was awarded April 3d which was approved by the court April 15, 1929.

The plans and specifications for the office equipment were approved by the court October 31, 1929, but the contract for materials was rejected. A new contract was approved January 24, 1930.

Plaintiff completed its construction September 15, 1930, or about a year beyond the time fixed for completion. The work was done in a satisfactory manner and it has been paid for at the contract price with the extras agreed upon. Shenk Company brought the present action to recover damages from the county because it claimed the delays incident to letting the two contracts just mentioned caused them additional unnecessary expense. The case was tried by the judge without a jury and Shenk was awarded a substantial sum, which the court in banc refused to disturb. The county takes this appeal.

While it is true that municipalities may construct and carry forward public undertakings authorized or directed by law and it has been stated that they will be

governed by the same rules in the interpretation and enforcement of such contracts as private citizens, and will not be permitted, at its pleasure, to violate or abandon such contracts (People v. Sohmer, 207 N. Y. 450) ; in this State we have held that where there is doubt as to the interpretation or application of the provision of a contract with public authorities "The contract will be interpreted in favor of the public": Com. v. Nelson-Pedley Const. Co., 303 Pa. 174, 180. There are certain impediments to the contractual power of municipal officers which everyone who deals with them is bound to know and be governed by. When such officers do acts for which they as individuals may be personally liable, such acts, in determining whether liability is to be imposed on a municipality, are governed by different rules if done in furtherance of a governmental function by a government agent, or if the officer, in acting, is subservient to or controlled by a supervisory body such as a court.

In the interpretation of this contract, these principles must be kept in mind. It is not the policy of courts to countenance or encourage dishonesty or overreaching by public officers in their official conduct, more particularly where the municipality benefits from such acts, though at times it would seem that municipalities or school districts do profit through the mistakes of their officers. We do not here deal with dishonesty, overreaching or unfair advantage; we have here delays of contractors and public officers claimed to be tantamount to negligence in failing to perform a public duty to the detriment of appellee.

The contract contained a provision relative to delays by the acts or neglect of the owner, architect, or other contractor or for any delays incident to the work.* The rule

---

* Article 18. Delays and Extension of Time.—If the Contractor be delayed at any time in the progress of the work by any act or neglect of the Owner or the Architect, or of any employe of either, or by any other Contractor employed by the Owner, or by changes ordered in the work, or by strikes, lockouts, fire, unusual delay in transportation, unavoidable casualties or any causes beyond the

relative to delays in the prosecution of work by an act or neglect of the owner, architect, or other contractors, or changes in the work and damages for wrongful acts or neglect has been thus stated. In construction work, an owner does not generally guarantee or indemnify against loss occasioned by the delays of independent contractors connected with the work which may be reasonably anticipated. The owner fulfills his duty when he selects as contractor a person generally known as responsible. Where contracts contain a provision against delay of other contractors or other incidents of the work, which provide in substance as this one does for no liability on the part of the owner for delays of contractors or changes in the work, such provision includes delays of other contractors in connection with the work, or delays which are covered by the contract or reasonably anticipated from the circumstances attending the project: Restatement of Contracts, section 315 (1) (b) ; see Goss v. Northern Pac. Hosp. Assn., 50 Wash. 236; Thompson v. St. Charles Co., 227 Mo. 220. But such provisions have no reference to an affirmative or positive interference on the part of the owner or his representative apart from the contract, or ordinarily to a failure to act in some essential matter necessary to the prosecution of the work unless delay in performance is contemplated by the contract; these interferences or failures may cause damages in other ways than that contemplated by the provision against delays: See Mulholland v. City of New York, 113 N. Y. 631; Weeks v. Rector, etc., of Trinity Church, 67 N. Y. S. 670; Erickson v. U. S., 107 Fed. 204; Cornell Co. v. Schuylkill

---

Contractor's control, or by delay authorized by the Architect pending arbitration, or by any cause which the Architect shall decide to justify the delay, then the time of completion shall be extended for such reasonable time as the Architect may decide.

Article 31. Damages.—If either party to this Contract should suffer damage in any manner because of any wrongful act or neglect of the other party or of anyone employed by him, then he shall be reimbursed by the other party for such damage.

Co., 222 Fed. 876; Sheehan v. Pgh., 213 Pa. 133; Pitt. Con. Co. v. Dayton, 237 Fed. 305. Such provisions do not include negligent acts of public officers in performing governmental functions, which will be discussed later.

Where a party under a delay and time extension provision on entering a contract foresees or should foresee that the work might be delayed by the failure of the owner or another contractor to perform, "the remedy therefor . . . [is an] extension of time on the part of those who perform the work, and the presumption arises that this was intended to measure the rights of the contractor thereunder": Goss v. Northern Pac. Hosp. Assn., supra; Cornell Co. v. Schuylkill Co., supra; see Richard v. Clark, 88 N. Y. S. 242; Haydnville M. & M. Co. v. Art Institute, 39 Fed. 484.

The general rule as to affirmative or positive acts is that where they materially interfere with the forwardness of the work, or cause other damage, the owner is liable, or as to negative action where the execution of such contract is dependent upon something essential, which is to be performed by the owner, the default of the owner for an unreasonable time, resulting in damages to the contractor, may render the owner liable for such damages. "Article 31" on "Damages" in the contract is within this rule. The wrongful act or neglect referred to in article 31 relates to loss sustained by causes not within article 18, the provision for delays. Illustration of a positive act within provisions similar to article 31 apart from the immediate contract is where the owner's engineers in the construction of a road gave a wrong grade (Mulholland v. City of New York, supra), or furnished defective materials (McPherson v. San Joaquin Co., 6 Cal. Unrep. 257, 56 Pac. 802), willful interference with contract, thus raising price of bricks (King & Kennedy v. Des Moines, 99 Iowa 432), willful acts of the owners (Merrill v. I. & O. R. R., 16 Wend. 586), improper suspension of work (U. S. v. Smith, 94 U. S. 214); and, of negative action, failure to perform an act essential to the work, that is, to

procure a permit to build (Weeks v. Rector, etc., of Trinity Church, supra), or the owner's failure or neglect to dig foundations which it had agreed to do (L. & N. R. R. v. Hollerbach, 105 Ind. 107), or delay in furnishing materials (Langford v. U. S., 95 Fed. 933), or delay forcing suspension of work (U. S. v. Mueller, 113 U. S. 153), or securing right of way necessary for the work (Pitt. Con. Co. v. Dayton, supra; Sheehan v. Pgh., supra). The court did not consider in the Sheehan Case the effect of knowledge by the parties at the time the contract was let that the right of way had not been secured and was thereafter to be acquired.

While it is true the contract must be regarded as furnishing the exclusive measure of compensation for the work done or damages suffered, actual damages apart from it which result from the employer's acts or failures should not fall on the contractor. It may be stated as a general rule that where an owner by an unwarranted positive act interferes with the execution of a contract, or where the owner unreasonably neglects to perform an essential element of the work in furtherance thereof, to the detriment of the contractor, he will be liable for the damages resulting therefrom.

Shenk claimed that during the delay in awarding the contracts he kept on the job and paid a skeleton working organization for some forty-nine weeks. The skeleton organization consisted of boss superintendent, carpenter foreman, labor foreman, watchman, part time for clerk, part time for mason superintendent and painter superintendent. Also because of the delay he expended sums for other items, insurance, contractor's fee, forty-nine weeks on retained percentage, forty-nine weeks interest on profit and bond premium.

The building contracts carried through the winter months. In this county, as in other northern counties, winter weather is quite severe, especially for some of the work that was here involved. It would be rather dangerous construction to push the veneer or outside facing

or the backing wall required by the plans and specifications during these months for reasons generally known. Shenk also knew prior to the execution of its contract that separate contracts must be let for the omitted portions of the completed structure. They knew the additional contracts must be approved by the court, and that later the court might disapprove them. Informal conversations were had with the judges to adjust the stone problem. Their contract contained no provision in relation to these contracts, nor the time when they would be let. Shenk's understanding as to letting later contracts was gathered from the general intent of the project with the plans and specifications therefor. Shenk claimed it was delayed twenty-four weeks on account of the letting of this contract. These incidents and others to be noted have an important bearing on the county's responsibility.

Before discussing the delay in letting the two contracts, we will consider delays generally in the prosecution of the work in connection with these contracts and the relation of such delays to the provision just discussed. The general contract was let in October, 1928, and Shenk states that he was ready for the facing stone the following March. There was nothing in his contract that required him to wait for the facing; it was entirely possible for the backing to have been put up with the facing to follow. But Shenk states that the architect issued instructions not to erect the backing until the facing stone was in place. He wanted both to go up together. There was no protest by Shenk as to these instructions, and no doubt they were proper. But this was an "act of the architect." The contract for facing was let early in April and approved by the court two weeks later. There was no shipment of stone until early in July. Shenk was thus "delayed . . . in the progress of the work by [the] act of . . . another contractor." It took the facing contractor eleven months to complete his job, or until July, 1930. This was because an insufficient number of men were employed by the stone erector. Here again we have the ele-

ment of delay by "another contractor." A simple statement of these facts will show that from April, 1929, to July, 1930, the incident of delay comes under the very terms of the provision in article 18. The owner took no affirmative steps to cause it. Nothing was done outside of the contract for construction. The stone facing contract was let to a responsible bidder, and was approved by the court. No delay can be conceived of in the progress of the work that will more clearly come within the provision in article 18 covering this sort of a delay.

Turning to the equipment contract, this was for metal filing cases resting on the floor and other equipment. Because they were not in place it is claimed that the rubber flooring was delayed as the rubber must be fitted around the equipment resting on the floors. Also, in a few instances, marble was to be attached. For this delay Shenk charged the wages paid to some of his skeleton organization. Why this was permitted is not clear for Shenk says the work of flooring and fitting was the work of subcontractors and the only thing he did was to have his foreman occasionally supervise the work. If there was a loss by this delay, it was the loss of the subcontractors. But, as we view the situation, there was no delay in this work separate and distinct from the delay in the stone work just discussed and other delays that will be mentioned.

The equipment contract was let in January, 1930. Had this contractor been prompt in delivering his material it would have been on the ground in time. The first shipment came about the time the stone contract was finished, July, 1930; that would be the correct time as the work was then progressing. Meanwhile there was nothing to delay the contractor from working inside the old building, placing the flooring wherever required, but the architect instructed them not to lay the floor until the filing equipment was in place. The laying of floors is usually the last work on any job of this character.

There were other delays connected with the stone work contract after shipment started, which affected the floor laying contract. Appellee claimed that the work did not proceed as rapidly as it could. It took eleven months to complete the work when five months were ample. There were delays in redesigning the structural steel. Also in changing certain work from stucco to stone, and the plumber delayed the job because he did not have sufficient men on hand. These "delays were quite considerable" and were "concurrent" with the main delays. Then Shenk had a large amount of extra work, totaling over $50,000. These caused some delay. Manifestly there was no divisable delay that could be fairly attributed to a delay in letting these two contracts. The delays thereafter all related to the provision of the contract just quoted, if it was to have any effect.

Appellee claimed to have paid its skeleton organization for forty-nine weeks waiting for work, yet it testified: "We probably could have gotten other good men, but it is very bad policy on any construction project to change superintendents in the middle of the job, or change any of the organization in the middle of the job." "Probably no considerable harm would have been done, excepting the man we had on this particular project was an exceptionally good man, and it was to our advantage and the county's advantage to have these men on the project."

The rule that a party cannot recover damages from a defaulting defendant which could have been avoided by the exercise of reasonable care and effort is applicable to all types of contracts. As stated in Sedgwick on Damages, (9th ed.), section 205: "The rule [avoidable consequences not recoverable] may be applicable in any case of breach of contract. Where damages are claimed, not for the direct injury, that is, the loss of the value of the contract itself, but for a consequential loss, the plaintiff cannot recover for such loss if he might reasonably have avoided it." Since the early New York case of Clark v. Marsiglia, 1 Denio 317, practically all American jurisdic-

tions recognize and adopt this rule: Chamberlin v. Morgan, 68 Pa. 168; Hoffman v. Delaware, etc., R. R. Co., 39 Pa. Superior Ct. 47.

Avoidance of the consequences of the county's delay in the instant case would not have necessitated affirmative efforts on the part of appellee and consequently the duty to discharge a useless working force or utilize it otherwise is stronger than in a case where a contractor would have had affirmatively to take steps to avoid the consequences of the delay. In other words, plaintiff admitted that he could have put his men at work some place else or have procured others and he should have done one or the other and not load a bill of $18,000 on the county for wages, etc.

As we view the circumstances from April 15th to the date of completion, there is not a single item of compensable delay, and appellee was in no position to claim damages. We now come to the more serious question between October, 1928, and April 15th.

The building was a public structure. To erect or repair it required not only the action of the commissioners, but also that of the court. The county could not proceed until the court approved the plans and specifications as well as the contract. There was delay in letting the contract, which was due, in a very large part, to the delay of the court in approving the materials that went into the building. The act of the county commissioners as well as that of the court was in the exercise of governmental functions. An adequate courthouse is necessary for the proper conduct of business of the county, not only with respect to what might be called "court business" but also all the various branches of government or county business located therein, as for instance the county treasurer, recorder of deeds, county controller, etc. Any delay that took place was the delay of the officers in the performance of governmental functions and any neglect was the neglect of such officers.

We stated in Szilagyi v. Bethlehem, 312 Pa. 260, where the plaintiff sought to hold the city liable in trespass for having failed to require a contractor to give an additional bond conditioned for payment of labor, material and machinery, that the failure to act was the failure to perform a governmental function or public duty and that "the requirement of the additional bond was purely an act of government, a protective measure for the betterment of a substantial part of the public, that is, persons who worked or provided materials for public works." That was a duty imposed by act of assembly on state authority. Neglect to perform it was a neglect of public officers.

In the present case the repairs and addition to the courthouse were done under the compulsion of legal authority. It was necessary for the citizens, the public, to have such a building. It was held in Cousins v. County of Butler, 73 Pa. Superior Ct. 86, in an action for trespass to recover damages for personal injuries caused by failure of the county commissioners to keep a county jail in proper repair that ". . . the erection of courthouses and jails and their maintenance in suitable and convenient order and repair are purely governmental functions, inherently belonging to the State and indispensably necessary in the administration of the laws of the Commonwealth: Moody v. State's Prison, 128 N. C. 12," and no recovery was permitted. The administration of justice is a public charge and so is everything necessarily attendant thereon. It was the legal duty of county authorities to furnish the necessary buildings and equipment for holding court and conducting public business. The statutes not only contemplate such buildings, but provide and command their erection when necessary. County commissioners have no option concerning this duty imposed by the State: Sturdevant & Co. v. Luzerne Co., 13 D. R. 72; see Mahon v. Luzerne Co., 197 Pa. 1; Commissioners of Trumbull Co. v. Hutchins, 11 Ohio Reps. 368; Kincaid v. Hardin Co., 53 Iowa 430; Dosdall v. County of Olmstead, 30 Minn. 96. County commis-

sioners cannot by contract impose liability on the county where by law none would exist, and when, by their contract, such liability is sought to be imposed for neglect, it can refer only to such neglect as the county would otherwise be legally liable for. There are sundry acts in connection with building and other operations, the negligent performance of which would impose this liability, and for which the county would have to respond in damages, but the damages resulting from the neglect or failure of the county officers, the court and the county commissioners to let the two contracts promptly, cannot be visited on the county. The neglect was the neglect of the officers to perform a public function, so that whatever damages resulted from October to March, and this record shows but little, if any, the county cannot be held liable therefor.

Our attention is called to Sheehan v. Pgh., supra. In that case the city officials, in purchasing right of way, were acting under authority of law perfected by proper ordinance when nothing was left to be done but to go out, buy or condemn the land. The contract was let on the mistaken assumption that this had been done. The officers whose duty it was to procure it could have been compelled to do so. It was a mere ministerial act. If the price for land was too high, they could have proceeded by condemnation to secure the land. The contractor moved heavy equipment on the ground and waited daily to begin work while the city secured the land. The loss recovered was for the increased cost in labor, rent, etc. Here the act required consideration, approval and judgment of two bodies, the commissioners and the court. They could not be compelled to act, and this circumstance was known to the contractor, as it was to everyone, when he executed his contract. The difference between the Sheehan Case and the present case is obvious.

The judgment of the court below is reversed.