**FRANK v. ALLEGHENY COUNTY.**

**No. 7519.**

Circuit Court of Appeals, Third Circuit.

April 7, 1941.

Rehearing Denied May 16, 1941.

Norman French, of Detroit, Mich. (Glenn E. Wilkerson, of Detroit, Mich., and Reed, Smith, Shaw & McClay, of Pittsburgh, Pa., on the brief), for appellant.

Edward G. Bothwell, of Pittsburgh, Pa. (Walter P. Smart, of Pittsburgh, Pa., on the brief), for appellee.

Before BIGGS, JONES, and GOODRICH, Circuit Judges.

GOODRICH, Circuit Judge.

Appellant, plaintiff below, was the successful bidder upon a road construction contract let by the defendant County. The primary purpose of the work was to reduce the degree of curvature along a certain section of highway in Harrison Township, Allegheny County. The relocation of the highway required a change in the channels of Bull Creek and Little Bull Creek and the construction of a new bridge over Little Bull Creek. At the site of the work Harrison Township owned and maintained a sewer-syphon system. Sewage flowed into a syphon inlet chamber from which it was carried in pipes under the old channel of Bull Creek to a syphon outlet chamber on the opposite shore, from which point it was carried away in an outlet pipe. The syphon outlet chamber being situated in the path of the new channel of Bull Creek, certain alterations were necessary. Briefly, the old outlet chamber was to be removed, a new one was to be constructed on the new shore of Bull Creek, and the necessary new piping was to be installed. The contract plans did not show the details of this construction but the "Supplemental Instructions to Bidders and Specifications" stated: "Details of the new construction shall be similar to that of the existing construction". About two weeks prior to plaintiff's submission of his bid the Board of Commissioners of Harrison Township had adopted a resolution approving the County's plan for the alteration of its sewer-syphon system.

Apparently all of the parties have been of the view that under the statutes of Pennsylvania it was necessary to obtain the approval of the Pennsylvania State Board of Health for the work on the sewer-syphon system.[1] However that may be, the contract specifically required that the alteration to the sewer-syphon system meet the approval of the Commissioners of Harrison Township and of the Pennsylvania State Board of Health. The State Sanitary Water Board (evidently the division of the Board of Health in charge of such matters as those involved here) issued its permits only to the municipal authorities having charge of the sewage system in question, in this case Harrison Township.

Plaintiff was directed by the County to commence work on December 24, 1938, and he did so. Shortly thereafter the Township decided that it was not satisfied with the existing system and that it would not accept the County's plan for the installation of a similar system. During most of the month of January, 1939, negotiations took place between the Township and the plaintiff with respect to the cost of the changes which the Township desired, but no agreement was reached. Meanwhile the Township had not applied for a permit from the State Board. Upon the plaintiff's then applying for a permit from the State Board, he was informed that it was necessary for the Township to make application. This the Township did on March 1, 1939, but the application was not accompanied by plans showing the details of construction, and there were certain defects in the existing system which the Board required to be corrected. These defects were corrected sometime between March 20 and March 27. At

---

[1] See the Act of June 22, 1937, P.L. 1987, § 207, 35 P.S. § 691.207: "All plans, designs, and relevant data for the construction of any new sewer system, or for the extension of any existing sewer system, by a municipality, or for the erection, construction, and location of any treatment works or intercepting sewers by a person or municipality, shall be submitted to the board for its approval before the same are constructed or erected or acquired. Any such construction or erection which has not been approved by the board by written permit, or any treatment works not operated or maintained in accordance with the rules and regulations of the board, is hereby also declared to be a nuisance and abatable as herein provided."

the request of the Township the County prepared the drawing required by the Board and the Township's application was finally completed on March 29, 1939.

By letter dated March 30, 1939, the Township was advised by the chairman of the Sanitary Water Board that, pending the next meeting of the Board, it had ad interim permission to proceed subject to certain conditions relating to the construction and the control of sewage during construction, the ad interim approval not to be effective until the receipt by the Board of its fee of $20. Plaintiff received a photostatic copy of this letter from the County on April 13, 1939.

Meanwhile the plaintiff had done some initial work on the job including some construction for the new syphon outlet chamber. But he had not done very much work, since it was necessary to complete the alteration to the sewer-syphon system before any other work could be done, or, if not absolutely necessary, it would at least have been highly impracticable to have done any other major part of the work first.

The contract provided that the work was to be completed within 150 days from the starting date and for liquidated damages of $25 per day for failure to complete on time. Plaintiff twice wrote to the County requesting an extension of time because of the delay in obtaining the permit, to which the defendant replied that the matter would be given due consideration at or shortly prior to the completion date set in the contract. The same position was taken by the County with respect to the plaintiff's request for damages arising out of the delay. On April 10, 1939, the contractor notified the County "that at the end of ten (10) days from this date the contract which I have with the County of Allegheny in the above entitled proceeding will be terminated by reason of the action of the Public Health Department failing to grant a permit for a period of more than three months."[2] On April 12, 1939, the County sent officers to the job site who prevented the plaintiff from removing his materials therefrom.

Plaintiff's complaint is in three counts. Damages are sought on the ground that the County is liable for breach of the contract (including the conversion of the materials at the job site), or for deceit, or in quantum meruit for the value of the work performed. At the trial judge's suggestion plaintiff submitted his evidence on the question of the defendant's liability and then rested temporarily so that the court could consider a motion by the defendant to dismiss the action. The motion was granted and plaintiff appeals from the order of dismissal.

The breach of contract claim will be considered first. In what way did the County fail to keep any agreement it made? Plaintiff complains of the County's failure to provide sufficient plans and the right-of-way. The contract provision as to plans is as follows:

"The Contractor will be supplied free of cost to him such copies of Contract Plans and Specifications as reasonably may be required for his use during the execution of the work. The plans will show the forms, dimensions, arrangements and materials, and also the location and elevations of the various parts forming the improvement. Plans for steel work will show the stresses to which the various members of the structure are to be subjected, the makeup of the members and their form and general arrangement.

"These plans may be supplemented from time to time as the work progresses and as may be required to further illustrate the work. When so stated on the Contract Plans or in the Supplemental Specifications, the County will furnish full size detailed drawings for specified portions of the work."

We are unable to see how this provision of the contract is involved. The County bound itself to furnish the contractor with such plans as reasonably might be

2 Paragraph 25 of the General Conditions provided: "If the Work shall be stopped by order of the Court or any other public authority for a period of three months without act or fault of the Contractor or of any of his agents, servants, employees, or subcontractors, the Contractor may, upon 10 days' Notice to the Owner, discontinue his performance of the Work, and/or terminate the contract, in which event the liability of the Owner to the Contractor shall be determined as provided in the paragraphs immediately preceding, except that the Contractor shall not be obligated to pay to the Owner any excess of the expense of completing the Work over the unpaid balance of the compensation to be paid the Contractor hereunder."

required "for his use during the execution of the work," and plaintiff states that so far as he was concerned he could have reconstructed the syphon from his own examination of it. Even if the contract were so construed as to place a duty upon the County to furnish the plans necessary to accompany the Township's application to the State Board for a permit, the failure to perform that putative duty was not the cause of the delay. It was not until sometime between March 20 and March 27, 1939, that the Township corrected the defects in the system and then the County furnished the drawing in time for the Township to complete its application on March 29, 1939.

With respect to rights-of-way the contract provided: "Requisite rights-of-way for said work will be furnished by the County, also all lawful authority that may be required to authorize crossings, reoccupation of any railroads, streets, alleys or wharves over or upon which said structure is to be built. The County will furnish the site for any structure clear of all properties of Public Service Corporations except steam and electric railways. Unless otherwise specified, the Contractor shall remove, at his own expense, all other visible obstructions. The contractor shall specify in writing to the Director the date on which he requires the removal or relocation of any obstruction for the removal or relocation of which the County is responsible, and he shall notify the Director in time to permit adequate notice to the owner for the removal or relocation of such obstruction."

However broad this provision might be standing alone, clearly it must be read in conjunction with the requirement that: "All alterations made [to the sewer-syphon system] shall meet the approval of the Commissioners of Harrison Township and the Pennsylvania State Board of Health." The approval of these two bodies was a contingency of which the parties to this contract were aware, but which neither of them could control. Comparable upon the facts is Union Pav. Co. v. Philadelphia, 1929, 95 Pa.Super. 342; see also Henry Shenk Co. v. Erie County, 1935, 319 Pa. 100, 178 A. 662. It is unnecessary to discuss other provisions of the contract which the plaintiff has condemned as "designed to defeat a claim under any eventuality," since the basic element of a cause of action is absent, i. e., the breach of a duty under

the contract by the County. The delay was due to the failure of the Township and the State Board to grant approval, not to anything done or omitted by the County, and the County did not undertake to guarantee that such approval would be forthcoming. Compare Henry Shenk Co. v. Erie County, supra. The plaintiff was justified in abandoning the contract,[3] but it is not a necessary corollary that the County be liable to him. We find no liability for breach of contract.

Other grounds urged by the appellant can be disposed of briefly. We find nothing to support any action on the theory of deceit. With regard to the claim upon a quantum meruit the plaintiff is met at the outset and concluded by the general rule which appears in § 107 (1) of the Restatement of Restitution: "A person of full capacity who, pursuant to a contract with another, has performed services * * * or otherwise has conferred a benefit upon him, is not entitled to compensation therefor other than in accordance with the terms of such bargain, unless the transaction is rescinded for fraud, mistake, duress, undue influence or illegality, or unless the other has failed to perform his part of the bargain." See also the exhaustive annotations to this Section in the Pennsylvania Annotations to the Restatement of Restitution. To this may be added the categorical statement in McClurg v. Price, 59 Pa. 420, 424, 98 Am.Dec. 356: "The principle is too well settled to admit of doubt, and too familiar to require the citation of authorities in its support, that for the part performance of an entire contract there can be no recovery, unless complete performance has been prevented or waived by the party entitled to demand it." If the rule thus broadly stated has exceptions, the present case does not bring them up.

One point remains to be considered. The plaintiff made a claim in paragraph 17 of his first count for conversion of certain property. His evidence tended to prove that officers from "the Sheriff's Department of Allegheny County" came out to the site of the job and prevented the plaintiff from taking away material supplied by him which was there for use in performance of the work. Such an assumption of dominion, if unjustified, would clearly amount to a conversion. Restatement, Torts §§ 221, 222. We do not think that the claim for the value of this material is met by saying,

---

[3] See the contract provision set out in note 2, supra, and Restatement, Contracts § 462.

as defendant does, that it is one for special damages for breach of contract and cannot be recovered in the absence of a breach.

The county further, however, calls attention to the provisions of paragraph 25 of the contract already set out in marginal note 2 above. The plaintiff's termination of the work was based upon this provision. It is to be noted, however, that the consequences of such termination by the contractor are referred back to the immediately preceding paragraph of the contract except that the contractor is expressly relieved from having to pay the owner for any excess expense involved in the completion of the work.

Paragraph 24 to which reference is thus made, has to do with the owner's privileges to stop work or terminate the contract. It states various circumstances under which the owner may terminate the employment of a particular contractor.[4] The last sentence but one of the paragraph permits the owner to take possession of and utilize, in completion of the project, the materials which are on the site of the work. Does the fixing of the "liability of the Owner to the Contractor" in paragraph 25 give a

privilege to the owner to appropriate in completing the work the contractor's materials even where the contractor has properly exercised his option to terminate the contract? If it is so construed paragraph 25 really means the rights and duties of the parties with regard to this contract are to be determined in accordance with the provisions of paragraph 24. While the language in the agreement is not happily chosen we conclude that it is meant to express just this. This conclusion is further supported by the express exception in paragraph 25 which relieves the contractor who has exercised his privilege of terminating the contract from being called upon to pay any excess between completion cost and the contract price. The contractor who exercises his privilege to terminate the contract is, therefore, relieved from further payment and may have a pecuniary claim if the work is done by the owner at less than the contract price. But this is the full measure of his rights. Having agreed that this shall be the measure of his rights he has no legal complaint when that measure is applied.

The judgment of the District Court is, therefore, affirmed.

---

[4] Paragraph 24. Owners Right to Stop Work or Terminate Contract. If (a) the Contractor shall be adjudged bankrupt or make an assignment for the benefit of creditors, or (b) a receiver or liquidator shall be appointed for the contractor or for any of his property and shall not be dismissed within 20 days after such appointment, or the proceedings in connection therewith shall not be stayed on appeal within the said 20 days, or (c) the contractor shall refuse or fail, after Notice or warning from the architect, to supply enough properly skilled workmen or proper materials, or (d) the contractor shall refuse or fail to prosecute the work or any part thereof with such diligence as will insure its completion within the period herein specified (or any duly authorized extension thereof) or shall fail to complete the work within said period, or (e) the contractor shall fail to make prompt payment to persons supplying work or materials for the work, or (f) the contractor shall fail or refuse to regard laws, ordinances or the instructions of the architect, or otherwise be guilty of a substantial violation of any provision of this contract, then, and in any such event, the Owner, without prejudice to any other rights or remedy it may have, may by 10 days notice to the Contractor, terminate the employment of the Contractor and his right to proceed, either as to the entire work or (at the option of the Owner) as to any portion thereof as to which delay shall have occurred, and may take possession of the work and complete the work by contract or otherwise as the Owner may deem expedient. In such case the Contractor shall not be entitled to receive any further payment until the work is finished. If the unpaid balance of the compensation to be paid, the Contractor hereunder shall exceed the expense of so completing the work (including compensation for additional managerial, administrative and inspection services and any damages for delay), such excess shall be paid to the Contractor. If such expense shall exceed such unpaid balance, the Contractor and his sureties shall be liable to the Owner for such excess. If the right of the Contractor to proceed with the work is so terminated, the Owner may take possession of and utilize in completing the work such materials, appliances, supplies, plant and equipment as may be on the site of the work and necessary therefor. If the owner does not so terminate the right of the Contractor to proceed, the Contractor shall continue the work.