### Lehman Bros., Inc. v. Redevelopment Authority of the City of Harrisburg

*Richard I. Kearns* and *Robert W. Maris,* for plaintiff.

*James W. Reynolds,* for defendant.

SWOPE, P. J., August 8, 1973.—This matter is before us on defendant's exceptions to our opinion and order dated November 30, 1972. Plaintiff, Lehman Bros., Inc., and defendant, Redevelopment Authority of the City of Harrisburg, had entered into a contract on March 26, 1969, whereby defendant was to sell and convey to plaintiff a tract of land in the City of Harrisburg, commonly referred to as the "Walnut Street Project," for purposes of private redevelopment by plaintiff. Pursuant to the terms of this agreement, plaintiff placed an $80,000 good faith deposit with defendant.

Plaintiff, in its complaint, averred that defendant had failed to make a proper tender of title to the land in question within the time allowed following notice by plaintiff that it was invoking the 30-day "cure period" as provided in the contract. Specifically, plaintiff claimed that defendant had not fulfilled conditions precedent to the conveyance contained in the contract which included the determination of a definite purchase price, approval of the Amended Urban Renewal Plan by the authority, approval of the Amended Urban Renewal Plan by the Department of Housing and Urban Development (HUD), and approval of the conveyance by the Harrisburg City Council. The authority denied that it had made an invalid tender and refused plaintiff's demand for return of the $80,000 deposit. Whereupon, plaintiff had instituted this action.

The court found that the cure period had commenced to run on February 20, 1970, on which date plaintiff had sent by letter a demand that defendant sign certain amendments to the contract and, in the event that defendant refused, the letter would serve as notice of the invoking of the 30-day cure period. Within the 30-day period, on March 20, 1970, the authority tendered an offer of title which the court nevertheless

found to be defective in that it was made following only the "conditional approval" of HUD. HUD's approval was conditioned upon Harrisburg City Council's passing a resolution affirming the need for transient housing in the "Walnut Street Project." The resolution in question was passed on March 24, 1970. In our original opinion, we held that the term "approval" in the contract meant the final and unconditional approval from HUD, without which the authority's tender was defective. HUD's final approval, after passage of the necessary resolution by Harrisburg City Council, was dated April 9, 1970.

The authority now takes the position that the court incorrectly stated the date upon which the cure period began and that by using the correct date as proposed by the authority, the tender would have been effective before the cure period expired. Because plaintiff had not sent the notice of cure by registered mail, as required by the contract, it is the contention of defendant that the cure period ran not from the date of its mailing, February 20th, but rather from the date of its receipt, February 23, 1970, to March 26, 1970. Defendant authority insists that this time difference is crucial on the theory that on March 24, 1970, when the Harrisburg City Council approved the resolution required by HUD, the conditional approval of HUD automatically became final. Therefore, defendant claims that the tender of March 20, 1970, did become effective prior to the expiration of the cure period.

While the contention of defendant as to the dates governing the running of the cure period appear meritorious, we fail to see that this would necessitate a change in our original decision inasmuch as we continue of the opinion that until the final approval was actually forthcoming from HUD, on April 9, 1970, the authority could not make a valid tender. We are satis-

fied that the "conditional approval" of HUD was not such an approval as was anticipated by the parties in the contract, and we hold that the authority could not make a valid tender until the approval of HUD was forthcoming without further qualifications. It would seem, in light of the fact that HUD, in fact, issued its final approval on April 9, 1970, that HUD itself did not consider its earlier conditional approval as having been rendered final automatically by the action of the Harrisburg City Council on March 24, 1970, or else it would have been unnecessary for HUD to take any further step to render it so. And yet it did take such a step. Conceivably, keeping in mind the great attention paid to technicalities by most agencies of the Federal government, including, we feel we may safely assume, HUD, even though the action of Harrisburg City Council taken on March 24, 1970, in passing a resolution was intended to satisfy the condition imposed by HUD, such resolution might have been found deficient by HUD and not, in fact, sufficient to satisfy it, whereupon, certainly, HUD's conditional approval would have continued unsatisfied. The only agency which could properly make such a determination was HUD itself, defendant's theory to the contrary in this regard notwithstanding. We are firmly of the opinion that the approval of HUD may only be taken as having become final when HUD said it was final. It did, in fact, say so, but not until April 9, 1970, well beyond the expiration of the 30-day cure period, even calculated, as we think the authority properly contends it must be, from February 23, 1970, to March 26, 1970.

Defendant further now contends that section 702 of the contract required that plaintiff give notice not only of the invoking of the 30-day cure period but also of its desire to terminate following the expiration of this 30-day period. Although this matter is raised for the first

time in these exceptions, we do not, in any event, believe that this contention has any merit. From a reading of the letter, it is clear that plaintiff intended to terminate the contract if defendant did not execute the proposed amendments to the contract. While the letter was to serve as the notice of the beginning of the 30-day cure period in the event that the amendments were not signed, plaintiff indicated that it did not believe that defendant could tender a valid offer within 30 days and, therefore, plaintiff would consider the contract terminated at the end of the 30-day period. Plaintiff left no doubt as to its planned action and the court is of the opinion that the letter of February 20, 1970, effectively served as notice to defendant of plaintiff's plan to terminate the contract.

The cautionary exceptions to the court's order and opinion of November 30, 1972, filed by plaintiff need not be considered in light of the foregoing.

Accordingly, we make the following

## ORDER

Now, August 8, 1973, the exceptions of defendant Redevelopment Authority of the City of Harrisburg to our opinion and order dated November 30, 1972, in the above-captioned matter, as well as the exceptions thereto of Lehman Bros., Inc., are hereby overruled each and severally and the order affirmed.

## DISSENTING OPINION

MORGAN, J., August 27, 1973.—I would sustain the Redevelopment Authority's exceptions to the opinion and order dated November 30, 1972, and hold that it is entitled to retain the $80,000 deposit.

It seems to me that the determination by the hearing judge followed from his application of the principle that the law abhors forfeitures; hence, the agreement must be strictly construed in order to prevent one. Application of the principle to this case involving a public work troubles me. It has been said that the rule that provisions for forfeitures are regarded with disfavor and construed strictly applies to cases of contract where forfeiture relates to matters admitting to compensation or restoration, but not to forfeitures intended to secure the construction of a work *in which the public is interested,* where compensation cannot be made for the default: 17 Am. Jur. 2d, Contracts §500.

We cannot overlook that we are dealing here with taxpayers' money. On the strength of the contract with Lehman, a large tract of land was condemned and, I assume, a very substantial amount of money paid to the condemnees. Lehman's good faith deposit was in the nature of a bond for performance. The urban renewal plan was fashioned to meet the specific needs of this redeveloper and, except for the Lehman agreement to purchase and redevelop, the condemnation and demolition would not have been done. The administration costs as well as the money already paid out must be very considerable. It appears that some two years after forfeiture, the authority has still not been able to interest another developer in the project. Tax revenues have been, and will continue to be, lost. How else is compensation to be obtained for a default of the redeveloper than by this forfeiture? Accordingly, I feel that this case must be viewed in the light of the principle of law that a contract with public authorities will be interpreted in favor of the public: Henry Shenk Co. v. Erie Co. et al., 319 Pa. 100, 178 Atl. 662 (1935);

Commonwealth ex rel. v. Nelson-Pedley Construction Co. et al., 303 Pa. 174, 154 Atl. 383 (1931); Idell v. Del. Co. Poor District, 27 Del. Co. 470 (1938).

As to the events themselves, I don't think that the Lehman notice of February 20, 1970, required the authority to do *anything* within 30 days. That the letter was sent by regular mail contrary to section 7, part I, of the contract strongly suggests that it was not a demand for tender under section 702(a), part II. Whatever it purported to say, and it is my own feeling that it may be construed as an anticipatory breach of the contract, it was *not* a written demand for "tender of conveyance of the property, or possession thereof, in the manner and condition . . . provided in this Agreement." That is precisely what Lehman did not want. The letter was, in fact, a demand for acceptance of enclosed amendments to the contract. To construe the letter as a demand for tender under section 702(a), part II, would mean that Lehman was acceding to tender of performance under the contract without amendment which is patently contrary to Lehman's intention.

Rather than construing the forfeiture provision so that it operates as an escape clause for Lehman, we must construe this contract to favor the public interest. As to the so-called conditional approval by HUD, on which the majority opinion turns, I simply cannot see why the public interest should receive such slight concern on this point. This redeveloper was looking for a way out, after having caused the public agency to tear down a couple of city blocks and incur great expense. The redeveloper then says that unless the public agency agrees to his contract changes it will be deemed in default. It is perfectly clear that Lehman never contemplated performance of the contract after

its letter of February 20, 1970. The HUD approval of March 19, 1970, if it was necessary at all at this time, was sufficient. The only condition to the approval by HUD of the redevelopment plan was receipt of a resolution of Harrisburg City Council affirming the need for transient housing. The condition arose from an inadvertence. The redeveloper was well aware that transient housing had, in fact, been approved by Harrisburg City Council as part of the plan and that, through oversight, the approval had not been included in the text of the resolution as adopted and sent to HUD. In its letter of March 19, 1970, HUD set forth the precise form of the required resolution on transient housing by reference to Urban Renewal Handbook RHA 7206.1, Chapter 2, sec. 2, app. I, para. 10, and on March 24, 1970, the Harrisburg City Council adopted the resolution in such form. We would hold that there was a difference between saying that the plan would not be approved until a certain resolution was adopted and saying, as did HUD's letter, that the plan was approved but unless the resolution on transient housing was delivered within a prescribed time, the approval would be declared null and void. We believe that, the required resolution having been delivered within the prescribed time, the HUD approval was effective as of March 19, 1970. To now say, because HUD took 13 days to acknowledge receipt of precisely what it had asked for, that the redevelopment authority did not perform its contract, is an insupportable strictness against the public agency and unwarranted favor to the redeveloper.

Accordingly, I respectfully dissent.