Pennsylvania Department of Transportation, Commonwealth of Pennsylvania, Petitioner *v.* Peter DePaul and Eugene DePaul, Trading as Tony DePaul & Son, Respondents.

Argued March 9, 1977, before President Judge Bowman and Judges Crumlish, Jr., Kramer, Wilkinson, Jr., Mencer, Rogers and Blatt.

*Stuart J. Moskovitz,* Assistant Attorney General, with him *Robert W. Cunliffe,* Deputy Attorney General, and *Robert P. Kane,* Attorney General, for petitioner.

*Marvin Comisky,* with him *Richard M. Rosenbleeth, Alan C. Gershenson,* and, of counsel, *Blank, Rome, Klaus & Comisky,* for respondent.

Opinion by Judge Wilkinson, Jr., March 30, 1977:
This is a Petition for Review of an award of the Board of Arbitration of Claims (Board) in the amount of $396,300.20 with interest from June 10, 1974, the date of the filing of the complaint. The award grows out of a dispute in the interpretation of a contract between petitioner and respondents. The contract provided for the installation of new traffic signals on North Broad Street in Philadelphia. The controversy centers around how the respondents are to be paid for

conduit and trench which were installed under the provisions of the contract. It is petitioner's position that payments for conduit and trench fall into two categories: (1) that identified on the contract drawings as "existing"; (2) that identified on the contract drawings as "proposed new conduit." The petitioner asserts that when respondents are required to replace existing conduit and trench they are to be paid by a unit price, but that the payment for all conduit and trench installed where the contract drawings call for proposed new conduit is covered by the lump sum bid for the contract. It is respondents' position that all new conduit and trench which they were required to install under the contract is to be paid for by a unit price. The Board found respondents' position to be the correct one. We must affirm.

The specific provision in the contract in principal controversy is printed in petitioner's reproduced record as one of the Special Provisions and provides:

Existing signal conduit shall be reused in place, where in reusable condition for installation of new signal cable. The amount of reusable conduit is unknown.

Prior to the installation of new signal cable the Contractor shall conduct a pulling test to determine whether the conduit is reusable. The decision as to whether or not the conduit is reusable will be made by the Engineer upon removal of the existing cable.

The Contractor shall install new conduit as directed by the Engineer. New conduit shall be galvanized steel alloy conduit and shall be paid for at the contract unit price per linear foot for Item No. 910-5005—2 Inch Galvanized Steel Alloy Conduit complete in place. The trench required for the conduit installation will be paid for at the contract unit price for Item

No. 910-6000 Trench, which price shall include compacted backfill and restoration of pavement or sidewalk.

The contract unit price for 910-5005 (conduit) was $6.00 a foot and for Item 910-6000 (trench) was $28.00 a foot. The amount of linear feet estimated to be installed under the direction of the Engineer and to be paid for by unit price was 6,750 feet, but the contract warned that this was an estimate only and was subject to increase or decrease. It is uncontested that pulling tests were conducted at the petitioner's direction and after the tests petitioner's Engineer directed respondents where to install new conduit and where existing conduit was to be reused.

After the project was underway it became apparent that far more than 6,750 feet of conduit and trenching would be needed. According to respondent's witnesses it was then that petitioner decided to attempt to distinguish between the conduit and trench marked on the plans as ''existing'' and that marked as ''proposed new conduit.'' Petitioner's witnesses testified to the contrary, but since the Board has found for respondents, their testimony must be accepted by this Court. *Security Painting Company v. Commonwealth*, 24 Pa. Commonwealth Ct. 507, 357 A.2d 251 (1976); *General State Authority v. Loffredo*, 16 Pa. Commonwealth Ct. 237, 328 A.2d 886 (1974).

After a careful study of all of the relevant parts of the contract provided us in both petitioner's record and respondents' supplemental record, not surprisingly we find that each party can point to provisions which are inconsistent with his opponent's position. Although there are many persuasive points made by respondents in support of its position, which position was ultimately adopted by the Board, among the most telling are: (a) if all of the conduit that is marked on the contract plans as ''existing'' were replaced

there would be only approximately 3,000 feet, whereas the estimate is 6,750 feet, indicating clearly that the unit price was to apply to far more than that identified as "existing"; (b) after the pull test was applied to some cable marked on the contract drawings as "proposed new cable" if the conduit passed the test the Engineer testified that he would not direct new cable to be installed, thus paying by lump sum for conduit never installed.

Although not argued by the parties and certainly not controlling, it seems persuasive to the Court that petitioner's position that the conduit identified on the drawings as "proposed new conduit" had to be installed as new conduit covered by the lump sum bid is seriously undermined on its face by the use of word "proposed." If it was required to be installed under the lump sum price, it does not seem likely that it would have been designated as merely proposed. Neither does it seem likely that the exact linear feet of new conduit and trench installed in such locations would have been pre-measured and recorded with the same care as that installed in the locations identified as "existing" if the former was covered by the lump sum bid and the latter was to be paid by linear feet on the basis of unit price.

There are several other points, too numerous to mention that support the respondents' and the Board's position, such as some intersections had all conduit and trench marked as "proposed new conduit," whereas even on these intersections, as well as others, estimates were given as to the amount of new conduit to be installed under the unit price.

Let it not go unsaid that petitioner presented strong arguments to support its position. Confronted with this dilemma, as indeed the Board is confronted in all its difficult decisions, it chose to accept re-

spondents' theory. In so doing it certainly is supported by the record.

In its opinion the Board relies on the application of the principle of construction of a contract that, where there is an ambiguity, the doubt will be resolved against the party drafting the contract. In the instant case this would be against petitioner. Petitioner insists that this principle of contract construction does not apply to the Commonwealth, citing *Commonwealth v. Nelson-Pedley Construction Co.,* 303 Pa. 174, 154 A. 383 (1931). At best, the statement of its inapplicability would be dicta in that case for the court expressly found there is no ambiguity. Further, the court expressed its own doubt on the matter by introducing the statement with the quizzical "perhaps." The only other case cited on this point by petitioner is *Henry Shenk Company v. Erie County,* 319 Pa. 100, 178 A. 662 (1935). In that case it was not a matter of interpreting the contract but rather a determination that "the neglect or failure of the county officers, the court and the county commissioners, to let the two contracts promptly, cannot be visited on the county." *Id.* at 112, 178 A. at 667.

On the other hand, *Sanctis Construction, Inc., Arbitration Case,* 158 Pa. Superior Ct. 71, 43 A.2d 581 (1945) stands squarely for the proposition that when a public body uses its own form for a contract, which is the situation in the case before us, any doubt will be resolved against the party supplying the forms. Although we do not deem the rule's applicability to be essential or controlling in this case, nevertheless, it seems clear that the rule does apply.

In addition to the basic question, petitioner raises the question that the Board abused its discretion by refusing the Petition to Reopen Evidence. We disagree. As indicated in the record, in an unusually candid response to a question asked by the Chairman

of the Board, counsel for petitioner was well aware that the facts offered to support the Petition put the matter in the posture of one where whichever way the Board decided, it would be the exercise of sound discretion and not the basis for reversible error.

Petitioner's final position is sound—the Board has incorrectly awarded interest. The Commonwealth is obligated to pay interest on awards only from the date the obligation arises. *General State Authority v. Loffredo, supra.* Petitioner would have us modify the Award to provide for interest on the entire Award from March 28, 1975. This would be incorrect under *Loffredo.* The bulk of the obligation was due and owing on April 24, 1974.

Accordingly, we will enter the following

### ORDER

Now, March 30, 1977, the Award of the Board of Arbitration of Claims, dated July 28, 1976, is modified so that the Award of $339,430.40 will bear interest from April 24, 1974 and the remaining sum of $56,870.20 will bear interest from March 28, 1975, and as so modified is affirmed.