305 F.2d 179
 Jesse JOHNSON and John Johnson, Formerly Partners Trading as Johnson Brothers Co., Appellants in No. 13,777,
v.
FENESTRA, INCORPORATED, (ERECTION DIVISION), Appellant in No. 13,778.
 No. 13777.
 No. 13778.
 United States Court of Appeals Third Circuit.
 Argued March 8, 1962.
 Decided July 6, 1962.
 
 Gilbert E. Morcroft, Pittsburgh, Pa., for Jesse and John Johnson.
 J. Tomlinson Fort, Pittsburgh, Pa. (Reed Smith Shaw & McClay, Pittsburgh, Pa., on the brief), for Fenestra, Incorporated.
 Before STALEY, HASTIE, and SMITH, Circuit Judges.
 HASTIE, Circuit Judge.
 
 
 1
 In this diversity case a subcontractor is seeking damages from the prime contractor on the theory that the latter's breach of contractual duty made the performance of the subcontract more costly than it would have been had the contractor acted as reasonably expected and required of him under the terms and circumstances of the bargain.
 
 
 2
 The defendant, Fenestra, had undertaken as prime contractor to erect the superstructure walls and roof of a new building of the Pennsylvania Electric Co. in Shawsville, Pennsylvania. It engaged the plaintiffs, partners trading as Johnson Brothers Co., as subcontractors to install the C-panels which were to serve as the outer skin of the building. In this subcontract Fenestra agreed to supply the C-panels.
 
 
 3
 Promptly upon delivery of the first shipment of C-panels, Johnson's crew reported to the job site and began installation. However, the panels were defective and the subcontractor was required to remove them. Several months elapsed before sufficient proper panels were delivered to enable the subcontractor to proceed normally with the installation.
 
 
 4
 Fenestra compensated Johnson for the extra labor cost of installing and removing the defective panels. However, the subcontractor claimed that the prime contractor's delay in supplying an adequate quantity of proper panels was a breach of contract which imposed other extra costs upon him. Particularly, Johnson complained that at times a crew of workmen had to be kept available and inactive waiting for materials and that the delay prevented completion of the work before winter. The performance of this exterior work in winter weather was said to have been more time consuming and more expensive than summer and fall performance in contemplation of which the subcontractor had bargained.
 
 
 5
 Fenestra rejected this claim and Johnson sued. An additional claim in suit is predicated upon the withholding of part of the contract price in circumstances that will be outlined later in this opinion.
 
 
 6
 The district court, sitting without a jury, denied recovery on the claim predicated upon delay in supplying materials, reasoning that "the possibility of delay in furnishing material was merely one of the calculated risks which constitute a normal feature of the contracting business" and that for such delay there can be no compensation unless the contract expressly so provides. On the separate claim for an unpaid balance of the contract price, the court allowed recovery in full. Johnson has appealed from the disallowance of the delay claim. Fenestra has appealed from the allowance of the entire balance of the contract price.
 
 
 7
 Because the contract was to be performed in Pennsylvania and had most of its other contacts with that state, Pennsylvania contract law determines whether the prime contractor's conduct in connection with the agreed supplying of materials constituted a compensable breach.
 
 
 8
 It is a familiar rule of contract law, adopted and applied by the courts of Pennsylvania, that a party breaches a bilateral contract when he does improperly or fails to do something which he has expressly or impliedly undertaken to do to facilitate the performance of the other party. Just Mfg. Co. v. Falck, 1946, 354 Pa. 421, 47 A.2d 659; Bodman v. Nathaniel Fisher & Co., 1920, 268 Pa. 535, 112 A. 99; see Sheehan v. Pittsburgh, 1905, 213 Pa. 133, 62 A. 642. Actually, this rule is but an application of the more general principle that a contract is to be enforced so as to give effect to the reasonable expectations created by the parties in entering into the bargain. See In re Kellett Aircraft Corp., 3d Cir. 1951, 191 F.2d 231; Restatement of Contracts § 315; 5 Williston, Contracts, rev. ed. 1937, § 1293A.
 
 
 9
 Within this framework, the question here is whether the furnishing of defective panels and the ensuing delay in supplying serviceable panels constituted a breach of contractual obligation. The contract expressly required the prime contractor to supply the panels which the subcontractor had agreed to install. The contract also required that performance begin within 7 days after its execution. On July 14th, promptly after the arrival of the panels which later proved defective, the subcontractor put an adequate crew to work upon the installation. In addition, the court below expressly found that in the contract negotiation "the understanding was that the installation had to be completed before cold weather, so that * * * workers could pursue other construction tasks inside with the benefit of heat". However, the court regarded this understanding as unimportant because the enclosure of the structure was something upon which the prime contractor insisted in the interest of its remaining work. But regardless of the reason for reaching an agreement on this point, we think the conclusion is inescapable that the bargain as made necessarily implied and gave the subcontractor assurance that the prime contractor would perform his obligation to supply panels at times and in quantities consistent with the understanding of the parties as to the prompt beginning and early completion of this installation. To rule otherwise would be to defeat the reasonable expectations created by the conduct of the parties.
 
 
 10
 Fenestra urges that Carroll Elec. Co. v. Irwin & Leighton, 1923, 80 Pa. Super. 438, supports its claim that damages caused by such delay as we have here is not compensable. But in the Carroll case the Superior Court relied upon the fact that the contract included an express provision for extension of time on account of delays experienced by the subcontractor by reason of conduct of the contractor or any other subcontractor. The contract also stipulated that it contained the entire agreement of the parties. The court reasoned that in such an integrated contract the express provision for a particular remedy in the event of delay must be construed as affording the sole remedy for such an occurrence. Of course, parties may validly contract that an extension of time shall be the only remedy for circumstances or contract causing delay. Henry Shenk Co. v. Erie County, 1935, 319 Pa. 100, 178 A. 662. The bargain in the Carroll case was construed as being such a contract.
 
 
 11
 It is equally clear that Fenestra is not aided by cases that treat delay as compensable because the occurrences which caused the delay were themselves within the contemplation of the parties at the time they entered their contract. Acchione v. Commonwealth, 1943, 347 Pa. 562, 32 A.2d 764; Frederick Snare Corp. v. Philadelphia, 1937, 325 Pa. 460, 190 A. 889.
 
 
 12
 None of these cases are in derogation of the general rule stated in the Shenk case that "where the execution of * * * [a construction] contract is dependent upon something essential, which has to be performed by the * * * [other party], the default of * * * [that party] for an unreasonable time, resulting in damages to the contractor, may render the * * * [other party] liable for such damages". 319 Pa. at 105, 178 A. at 664. This rule applies here.
 
 
 13
 It follows that the court should have allowed recovery of such additional costs of performance as were imposed upon the subcontractor by the failure of the prime contractor to supply materials soon enough for the work to proceed and to be completed within the time that had been mutually contemplated and agreed. Since no finding was made by the court as to the extent of the damage thus caused there must be a new trial on this issue.
 
 
 14
 The one item of damages that the trial court allowed was an unpaid balance of the subcontract price, amounting to $2,994.20. The prime contractor now challenges that allowance. It claims that there should have been deducted from this balance the cost of certain "cleanup work", allegedly Johnson's responsibility, for which Fenestra employed another subcontractor. The court found that "Johnson * * * was ready, willing and able to perform this work, but that Fenestra followed the course of least resistance in turning to * * * [another subcontractor] rather than pursuing Johnson to complete his obligation". We think the quoted language includes a sufficient finding that cleanup work was part of Johnson's contractual obligation. However, it does not appear whether anything said by Fenestra, or its conduct, amounted to acceptance of Johnson's work as complete. In this connection we do not know whether it was or was not appropriate that Johnson's cleanup work be postponed until the completion of operations by other trades. We can say only that if there was an acceptance of this subcontractor's work as complete, Johnson is entitled to the full balance of the contract price, particularly since Johnson was never asked to do any cleanup work. 5 Williston, Contracts, Jaeger ed. 1961, § 724.
 
 
 15
 But, if there was no acceptance of Johnson's work as complete, we think it would be inequitable to put this subcontractor in a better position than it would have been had it completed its work. In these circumstances, Johnson should recover the difference between the $2,994.20 balance of the contract price and the expense that Johnson would have incurred in accomplishing the cleanup work. Hottinger v. Hoffman-Henon Co., 1931, 303 Pa. 283, 154 A. 598. Accordingly, pursuant to Fenestra's appeal, there must be a partial new trial to determine whether Fenestra accepted Johnson's work as complete and, if not, to limit Johnson's recovery in accordance with the foregoing analysis.
 
 
 16
 Finally, these appeals present an unusual situation as to the allocation of costs. Each party prevails on its appeal. Johnson's appeal presented issues requiring a much more extensive briefing and printing of record materials than did Fenestra's. A single appendix, printed and filed by Johnson, has served the purposes of both appeals, while Fenestra has dealt with both appeals in a single brief. Some reasonable allocation of such items between the two appeals will be necessary in order that each party may recover its taxable costs of the appeal upon which it prevailed.
 
 
 17
 The judgment is reversed and the cause remanded for proceedings consistent with this opinion. Each party shall recover the costs of its successful appeal pursuant to an allocation in accordance with this opinion.