**ELECTROSONICS INTERNATIONAL, INC.**

v.

**The WURLITZER COMPANY.**

**Civ. A. No. 35048.**

United States District Court
E. D. Pennsylvania.
Sept. 8, 1964.

914

Albert Ring, Philadelphia, Pa., for plaintiff.

David A. Saltzburg, Philadelphia, Pa., for defendant.

VAN DUSEN, District Judge.

This case is now before the court on defendant's Motions to Quash Return of Service of the Summons and Complaint or to Dismiss the Action (Documents 3 and 10).[1]

The Amended Complaint alleges that on May 3, 1962, plaintiff issued a purchase order covering 2500 Resonant Reed Relays, as specified in the order which is attached as Exhibit A to the Amended Complaint (Document 9). The last sentence of paragraph 3 and paragraph 4 of the Amended Complaint contain this language:

"Defendant was advised and understood that said relays were to be used by plaintiff in the manufacture of alerting receivers, specialized electronic equipment, which was plaintiff's principal product; defendant understood that the frequencies to which said relays were tuned to respond were critical to the successful operation of plaintiff's equipment.

"4. Defendant corporation failed to meet the production and shipping schedule for said relays which had been agreed upon by the parties; but, did between June 6, 1962 and August 15, 1962, ship 200 of said relays to plaintiff. After inspection by plaintiff, fourteen relays were found to be defective, and the remaining relays were installed in plaintiff's equipment. After the manufacture and delivery of said instalert receivers, plaintiff received numerous complaints from customers concerning the failure of said receivers to function under normal operating conditions; and after examination and inspection of the defective equipment, plaintiff ascertained that in each instance the malfunction was caused by the failure of defendant's Resonant Reed Relays to operate properly either because the reeds were subject to undue shift of frequency after use or because the electrical contacts

---

1. By stipulation of counsel (Document 11), it was agreed that all affidavits filed by defendant in support of its original motion should be considered in support of defendant's Motion to Quash Service of the Amended Summons and the Amended Complaint, and that subsequent affidavits, as well as answers to interrogatories, should be considered in deciding both motions. Defendant's affidavits are attached to its original motion (being Document 3), Document 4, Document 13 and Document 17. Plaintiff's affidavit is Document 16.

in the relays did not function properly after use. Although defendant replaced eight (8) of the relays found to be defective prior to installation, it has failed and refused to supply plaintiff with properly functioning relays to replace the remainder of the defective relays referred to hereinabove; it has failed and refused to meet delivery schedules for said relays and defendant corporation has also failed and refused to compensate plaintiff for damages sustained by reason of the foregoing."

The affidavits and answers to interrogatories establish that the defendant Ohio corporation accepted the order in New York State, where the relays were manufactured and shipped.

A. Contention that service of process on the defendant has been validly made under 15 P.S. § 2852–1011, subd. B.

15 P.S. § 2852–1011, as amended by the Act of 1963, Aug. 13, P.L. ——, No. 377, §§ 1 and 2, provides, inter alia:

"B. Any foreign business corporation which shall have done any business in this Commonwealth, without procuring a certificate of authority to do so from the Department of State, shall be conclusively presumed to have designated the Secretary of the Commonwealth as its true and lawful attorney authorized to accept, on its behalf, service of process in *any action arising within this Commonwealth.* * * *

"C. For the purposes of determining jurisdictions of courts within this Commonwealth, the entry of any corporation into this Commonwealth for the doing of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object, or doing a single act in this Commonwealth for such purpose, with the intention of thereby initiating a series of such acts, shall constitute 'doing business.'" (Emphasis added.)

■ The record makes clear that defendant is doing business in Pennsylvania within the meaning of the above-quoted 15 P.S. § 2852–1011, subds. B and C, as amended by the above-mentioned Act of 1963. (See paragraphs 8–10 and 15 of the answers to interrogatories (Document 12) and page 10 of defendant's brief, as well as Rufo v. Bastian-Blessing Co., 405 Pa. 12, 14–18, 173 A.2d 123 (1961).) The principal issue for determination in this case is whether the cause of action alleged in the above-quoted language from paragraphs 3 and 4 of the Amended Complaint constitutes an "action arising within this Commonwealth."

■ The purchase order was accepted in New York, the contract was formed there, and New York was the place of performance of the contract. Insofar as the cause of action consists of the failure of defendant to meet the production and shipping schedules for the relays and its shipment of relays which were defective at the time of shipment, the following legal principles indicate that the cause of action arose in New York at or before the time of delivery of the defective relays to the common carrier or at the time of the failure to deliver the relays to the carrier according to the delivery schedule in New York:[2]

1. The place of the contract was New York, since that is the place where the last act necessary to its completion was done. Parkway Baking Company v. Freihofer Baking Company, 255 F.2d 641 (3rd Cir. 1958); Craig v. W. J. Thiele & Sons, Inc., 395 Pa. 129, 149 A.2d 35 (1959). See § 74, Restatement of Contracts, and

2. The fact that plaintiff first learned that some of the relays were defective when they were in Pennsylvania (see paragraph 4 of Amended Complaint) is no indication that the fault did not arise when they were made in New York.

§ 97 of Williston on Contracts (Rev. Ed.).

2. A cause of action arose as soon as there was any delay in performance as required by the terms of the contract. Johnson v. Fenestra, Incorporated (Erection Division), 305 F.2d 179, 182 (3rd Cir. 1962). See § 1291 of Williston on Contracts (Rev.Ed.)

3. The law of the place of performance (in this case New York) determines whether a breach of contract has occurred, the right to damage, and the measure of damages. Plotnick v. Pennsylvania Smelting & Refining Co., 194 F.2d 859 (3rd Cir. 1952). See §§ 358, 370, 372 and 413 of the Restatement of Conflicts of Law.

■■■ Upon this record, and by applying the above principles, it is evident that the cause of action in this case arose in New York and that this cause of action is not one "arising within this Commonwealth." [3] Since this cause of action was not one "arising within this Commonwealth," the service upon the Secretary of the Commonwealth under § 1011, subd. B must be quashed.

B. Contention that service of process has been validly made on the Pennsylvania corporation, as an agent of the Ohio corporation.

In addition to serving the Secretary of the Commonwealth, plaintiff also attempted service by serving Mr. Kull, the credit manager of Wurlitzer Company of Pennsylvania, a subsidiary of the defendant. Plaintiff contends that this service was valid under the provisions of F.R.Civ.P. 4(d) (3) and (7), alleging that the subsidiary was actually an agent of the defendant. Affidavits and answers to interrogatories have been filed (see the documents listed in footnote 1, supra) which establish the following:

1. The credit manager of Wurlitzer Company of Pennsylvania, Mr. Kull, was not an officer of the defendant, its managing agent, general agent, nor anyone authorized by law or appointed by the defendant to receive service of process.

2. Mr. Kull was an employee of the Wurlitzer Company of Pennsylvania and not an employee of the defendant.

3. The defendant Ohio corporation is "doing business" within Pennsylvania under 15 P.S. § 2852–1011, subd. C (see page 915 above).

4. Wurlitzer Company of Pennsylvania is a subsidiary of the defendant and is a Pennsylvania corporation.

5. Wurlitzer Company of Pennsylvania sells items manufactured by the defendant, but does not solicit orders for the defendant. Those items sold by the subsidiary which are manufactured by the defendant account for approximately 85% of the subsidiary's business. These same items are sold for the subsidiary's own account and not "on account" of the defendant.

6. The defendant, in addition to those products such as organs, pianos, phonographs, etc., which it sells to Wurlitzer Company of Pennsylvania, also manufactures and sells to others different items, such as coin-operated phonographs, electronic components, etc. It also sells to the Government various other items which the latter uses in defense contracts.

7. Wurlitzer Company of Pennsylvania does not solicit orders for the defendant. The defendant's employees regularly solicit orders in Pennsyl-

3. 15 P.S. § 2852–1011, subd. B. Although there have been no reported assumpsit cases involving the 1963 amendment to § 1011, subd. B, several recent cases (but involving that section prior to its amendment) have indicated that such a cause of action must have arisen in Pennsylvania. See Technograph Printed Circuits, Ltd. v. Epsco, Incorporated, 224 F.Supp. 260 (E.D.Pa.1963); Currie v. Chicago Blower Corporation, 207 F. Supp. 177, 178 (W.D.Pa.1962); Hamilton Equip., Inc. v. Onamia Corp., 411 Pa. 525, 529, 192 A.2d 734 (1963), and Yentzer v. Taylor Wine Co., Inc., 409 Pa. 338, 341, 186 A.2d 396 (1962).

vania, although some Pennsylvania customers regularly deal directly with the defendant's plants. For the last two fiscal years, sales by defendant in interstate commerce from manufacturing points outside of Pennsylvania for shipment to Pennsylvania purchasers have aggregated approximately:

Year ended March 31, 1963
$1,543,000
Year ended March 31, 1964
$1,594,000

8. Defendant, through another subsidiary which is a Delaware corporation, does some financing for Wurlitzer Company of Pennsylvania.

9. All of the officers and directors of Wurlitzer Company of Pennsylvania are either officers or directors of the defendant, but not all of the officers and directors of the defendant are officers or directors of Wurlitzer Company of Pennsylvania.

10. About once a month, a representative of the defendant calls upon the manager of the Wurlitzer Company of Pennsylvania. This call is treated by both parties as they would any other business call.

11. Plaintiff sent the order which is the subject of this suit to defendant's plant in North Tonawanda, New York. There is nothing to show that Wurlitzer Company of Pennsylvania had any connection with this order.

Since there is nothing in the record to suggest that the subsidiary acts for the defendant or as its agent, or that these companies ignore the formalities customarily associated with separate corporations, the court may not say that one is the agent of the other for purposes of service of process. See Howell v. Kennecott Copper Corporation, 21 F.R.D. 222 (E.D.Pa.1957), and cases cited therein, aff'd per curiam 258 F.2d 946 (3rd Cir. 1958), and Technograph Printed Circuits, Ltd. v. Epsco, Incorporated, fn. 3, supra. There has not been introduced into this record sufficient evidence of the conduct of either the defendant or of Wurlitzer Company of Pennsylvania which would justify service of process in this case upon the subsidiary. Accordingly, the attempted service upon Wurlitzer Company of Pennsylvania must be quashed.

ORDER

And now, September 8, 1964, upon consideration of the above Motions (Documents 3 and 10), and the record as a whole, it is ordered that defendant's Motion to Quash Return of Service of Summons and Complaint or to Dismiss Action (Document 3) and defendant's Motion to Quash Return of Service of Amended Summons and Amended Complaint or to Dismiss Action (Document 10) are granted, and this action is dismissed, without prejudice.