## Remsco Associates, Inc. v. Beaver Falls Municipal Authority

562

*Robert Rex Downie*, for plaintiff.
*J. David Ray*, for defendant.

ROWLEY, J., May 8, 1973.—Defendant, Beaver Falls Municipal Authority, has presented a petition pursuant to section 11 of the Arbitration Act of April 25, 1927, P. L. 381, sec. 11 (No. 248), 5 PS §171 (hereinafter referred to as the Arbitration Act) asking that the court make an order modifying an arbitrators' award entered in favor of plaintiff, Remsco Associates Inc. Plaintiff filed an answer to defendant's petition and, following the filing of written briefs and oral arguments by counsel, the matter is before us for disposition.

On September 28, 1967, defendant, as owner, entered into a written contract with plaintiff, as one of the prime contractors, for the mechanical work in connection with the construction of a water filtration plant. In addition to plaintiff's contract, there was a general contractor and four other prime contractors. Plaintiff's contract provided that all work was to be completed within 365 consecutive calendar days following receipt

of written notice to proceed. The contract also provided that time in this regard was of the essence. The engineer on the project notified plaintiff, in writing, to proceed with the work effective November 1, 1967. However, by reason of delays in the work, the project was not completed or plant operations commenced by defendant until about May 14, 1969. Plaintiff thereafter presented a claim for additional expenses which it alleged were unnecessary and were caused by the failure of defendant, as owner, to compel compliance by the general contractor and other prime contractors with the time requirements of the contract. The matter was eventually submitted to a board of arbitration pursuant to paragraph 46 of the "general conditions" of the contract. After a number of hearings, at which evidence was presented by both parties, the board, in a 2 to 1 decision, entered an award in favor of plaintiff.* In its petition for modification, defendant asks that the court set aside the aribtrator's award in favor of plaintiff for damages resulting from the delay in completion of the contract work.

Although paragraph 46 of the "general conditions" of the contract, which provides for arbitration, states that the award of the arbitrators "shall be final, binding and conclusive upon all parties without exception or appeal," both parties agree that the Arbitration Act is applicable and the court may review the award in accordance with the terms of the act. Section 16 of the Arbitration Act of April 25, 1927, P. L. 381, 5 PS §176, provides that it is applicable "to any written contract to which the Commonwealth of Pennsylvania, or any agency or subdivision thereof, or any municipal cor-

---

* All three arbitrators joined, however, in awarding plaintiff interest on the final payment made by defendant to plaintiff under the contract. This award of interest has not been challenged by defendant, either in its written brief or at oral argument.

poration or political division of the Commonwealth shall be a party." In Acchione v. Commonwealth, 347 Pa. 562 (1943), the court held that section 16 of the Arbitration Act is mandatory and is a part of any contract to which the Commonwealth or any of its agencies is a party. The court also held that this was so even though the contract itself provides that an arbitration award should be final and conclusive and specifically states that there shall be no right of appeal. Also see J. A. Robbins Company, Inc. v. Airportels, Inc., 418 Pa. 257 (1965); Seaboard Surety Company v. Commonwealth, 345 Pa. 147 (1942); and Philadelphia Housing Authority v. Turner Construction Co., 343 Pa. 512 (1942).

The scope of our review is set out in section 11 of the Arbitration Act as follows:

"In either of the following cases the court shall make an order modifying or correcting the award upon the application of any party to the arbitration:

". . .

"(d) Where the award is against the law, and is such that had it been a verdict of the jury the court would have entered different or other judgment notwithstanding the verdict.

"The court may modify and correct the award or submit the matter to the arbitrators": 5 PS §171.

In the case of McDevitt v. McDevitt, 365 Pa. 18 (1950), at page 21, the court said:

"But in the present instance it seems to be agreed by both parties that the arbitration under the partnership agreement was to be governed by the Act of April 25, 1927, P. L. 381; that Act provides (section 11(d)) that the court shall modify or correct the award upon the application of any party to the arbitration where the award is against the law and is such that had it been a verdict of the jury the court would have entered a

different or other judgment notwithstanding the verdict; therefore mistakes of law, but *only* mistakes of law, may be rectified on appeal." (Emphasis in original.)

We are required to draw all inferences of fact in favor of plaintiff since it has received the award of the arbitrators: Pa. Turnpike Commission v. Smith, 350 Pa. 355 (1944).

Defendant's contention is that the contract between the parties provides that the sole remedy available to plaintiff for a delay in the work was an extension of time. This argument is based upon paragraph 39 of the "General Conditions" of the contract, which reads as follows:

"If the Contractor is delayed at any time in the progress of the work by any of the following, the time of completion shall be extended for such reasonable time as the Engineer decides.

"(a) By any act or neglect of the Owner or the Engineer or an employee of either.

"(b) By any separate Contractor employed by the Owner.

". . .

"No such extension shall be made for a delay occurring more than seven (7) days before claim therefor is made in writing to the Engineer."

Defendant cites the case of Henry Shenk Co. v. Erie Co., 319 Pa. 100 (1935), in support of its contention. In that case, the court held that plaintiff-contractor's sole remedy was an extension of time and he was not entitled to monetary damages for delay in completion of the contract. That contract contained a provision which was practically identical in all material respects with paragraph 39 of the "General Conditions" in the contract now before us. In the Shenk case the court said, at pages 103-06:

"[I]n this State we have held that where there is doubt as to the interpretation or application of the provision of a contract with public authorities *'The contract will be interpreted in favor of the public'*: Com. v. Nelson-Pedley Const. Co., 303 Pa. 174, 180. There are certain impediments to the contractual power of municipal officers which everyone who deals with them is bound to know and be governed by. When such officers do acts for which they as individuals may be personally liable, such acts, in determining whether liability is to be imposed on a municipality, are governed by different rules if done in furtherance of a governmental function by a government agent, or if the officer, in acting, is subservient to or controlled by a supervisory body such as a court.

" . . .

"The contract contained a provision relative to delays by the acts or neglect of the owner, architect, or other contractor or for any delays incident to the work. The rule relative to delays in the prosecution of work by an act or neglect of the owner, architect, or other contractors, or changes in the work and damages for wrongful acts or neglect has been thus stated. *In construction work, an owner does not generally guarantee or indemnify against loss occasioned by the delays of independent contractors connected with the work which may be reasonably anticipated.* The owner fulfills his duty when he selects as contractor a person generally known as responsible. Where contracts contain a provision against delay of other contractors or other incidents of the work, which provide in substance as this one does for no liability on the part of the owner for delays of contractors or changes in the work, such provision includes delays of other contractors in connection with the work, or delays which are covered by the contract or reasonably anticipated from the cir-

cumstances attending the project: Restatement of Contracts, section 315(1)(b); see Goss v. Northern Pac. Hosp. Assn., 50 Wash. 236; Thompson v. St. Charles Co., 227 Mo. 220. *But such provisions have no reference to an affirmative or positive interference on the part of the owner or his representative apart from the contract, or ordinarily to a failure to act in some essential matter necessary to the prosecution of the work unless delay in performance is contemplated by the contract; these interferences or failures may cause damages in other ways than that contemplated by the provision against delays:*

"Where a party under a delay and time extension provision on entering a contract foresees or should foresee that the work might be delayed by the failure of the owner or another contractor to perform, 'the remedy therefor . . . [is an] extension of time on the part of those who perform the work, and the presumption arises that this was intended to measure the rights of the contractor thereunder.'

"The general rule as to affirmative or positive acts is that where they materially interfere with the forwardness of the work, or cause other damage, the owner is liable, or as to negative action where the execution of such contract is dependent upon something essential, which is to be performed by the owner, the default of the owner for an unreasonable time, resulting in damages to the contractor, may render the owner liable for such damages.

"While it is true the contract must be regarded as furnishing the exclusive measure of compensation for the work done or damages suffered, actual damages apart from it which result from the employer's acts or failures should not fall on the contractor. *It may be stated as a general rule that where an owner by an unwarranted positive act interferes with*

*the execution of a contract, or where the owner unreasonably neglects to perform an essential element of the work in furtherance thereof, to the detriment of the contractor, he will be liable for the damages resulting therefrom."* (Italics supplied throughout.)

In the Shenk case, the court found that there were two distinct and separate categories of delay. In one, the delay was caused by the failure of other contractors on the job to perform and certain acts of the architect which delayed progress of the work. The other category of delay was that caused by the county commissioners' failure to promptly let, and obtain court approval of, contracts for other necessary portions of the work. The Supreme Court held that neither of these types of delay rendered the county liable. The court pointed out that the county, as owner, had not taken any affirmative steps to cause the delay of the other contractors or the action of the architect. Likewise, in the case of Emporium Area Joint School Authority v. Anundson Construction and Building Supply Co., 191 Pa. Superior Ct. 372 (1959), reversed on other grounds, 402 Pa. 81 (1960), the Superior Court held that the joint school authority could not be held liable for delays in completion of construction, which delays were caused by actions of other contractors, the architect and the job inspector. We are of the opinion that the Shenk case and the Emporium case control the factual situation presented by the record in the case before us. Considering the record in the light most favorable to plaintiff, it appears that the delay in completion of the work was due to the failure of the general contractor and the project engineer to promptly and efficiently schedule and coordinate the work of the various crafts and contractors so as to complete the work on

time. It appeared that the job was shut down for some period of time during the winter months, although plaintiff argues that that shut down by the general contractor was not necessitated by the weather conditions. In addition, plaintiff also contends that at least one of the subcontractors hired by the general contractor for some of the work was incompetent and failed to have a sufficient number of men on the job to promptly complete that portion of the work. These are the same kind of delays, however, which were encountered by the contractor in the Shenk case and in the Emporium case, supra. The delays of the general contractor and other independent contractors were of the type which may be reasonably anticipated by the parties to this lawsuit. The record does not disclose that the owner was guilty of any affirmative or positive interference with the plaintiff's work, nor does it disclose that defendant-owner failed to perform in some essential matter anything which was necessary to the prosecution of plaintiff's work. Therefore, the delays which plaintiff complains of fall within the scope of paragraph 39 of the general conditions, set forth above, and limit plaintiff's remedy to an extension of time to complete its own contract.

Plaintiff relies on the case of Johnson v. Fenestra, Inc., 305 F. 2d 179 (1962). That case involved a claim by a subcontractor against the prime contractor for damages resulting from a delay by the prime contractor in furnishing proper materials which were to be erected by plaintiff-subcontractor. It is to be noted that defendant in that case was not the owner, but was rather a prime contractor. Defendant in that case, not being a public authority, the rule that the contract must be interpreted in favor of the public does not apply. In addition, it appears from a reading

of the opinion of the court of appeals that the contract in that case did not contain a provision for delay and extension as did the contract in the Shenk case.

Although not cited by counsel in this case, the Supreme Court considered this problem in Gasparini Excavating Co. v. Pa. Turnpike Commission, 409 Pa. 465 (1963). In that case, the arbitrators and the trial court refused the contractor's claim for damages said to have resulted from a delay in performance of the contract. Those decisions were based upon a provision in the contract which specifically provided that no damages would be allowed for such delays. The Supreme Court reversed and held that the contractor was entitled to damages. However, the Supreme Court, in its opinion, pointed out that defendant-owner had actively interfered with the contractor's work by denying the contractor access to the work area which was occupied by another contractor at the time defendant issued its order to proceed with the work. In the case before us, there was no such active interference and at no time did defendant-owner deny plaintiff access to the work area. In its opinion, in the Gasparini case, the Supreme Court characterized the conduct of defendant-owner as coming within the exceptions pointed out in the Shenk case where there has been an affirmative or positive interference by the owner apart from the contract or the failure to act in some essential matter which was necessary to complete the work properly. On the record before us, however, the conduct of defendant-owner does not fall within either of those two exceptions.

Plaintiff argues, however, that coordination of the work between the various parties was critical to the time of completion and that time of completion was

of the essence: Paragraphs 28 General Conditions, and K-1c Special Requirements. Plaintiff further argues that in spite of the necessity for coordination and cooperation, in order to complete the project on time, defendant failed to take any action to enforce the various time limitations against the general contractor or other prime contractors. Plaintiff argues first, that under paragraph 7 of the Special Conditions, the engineer had the right to order contractors to increase their efficiency and to expedite the work. However, it should be noted first that paragraph 7 provides that "the engineer *may* order the contractors to increase their efficiency" but does not make it mandatory that he do so. The paragraph goes on to provide that "the failure of the engineer to demand such increase of efficiency, number or improvement shall not relieve the contractor of his obligation to secure the quality of the work and the rate of progress necessary to complete the work within the time required by this contract to the satisfaction of the engineer." Plaintiff also argues that under paragraph 24 of the General Conditions, the engineer has the obligation to schedule and coordinate the work of the various contractors. However, paragraph 24 merely provides that the engineer will observe the construction for the owner and shall decide all questions relating to amount, quality, acceptability and fitness of the work and materials. In addition, under paragraph 28 of the General Conditions, plaintiff is required to cooperate with other contractors on the job and fit his own work to the work of the other contracts as may be directed by the engineer. Thus, it would appear from the contract that the obligation to schedule and coordinate the work required cooperation between the various contractors on the job. Finally, plaintiff

argues that defendant had the right, under paragraph 32 of the General Conditions, to terminate the employment of any contractor who failed "to prosecute the work . . . with such diligence as will insure its completion within the period herein specified." However, the right of the owner to terminate a contract is optional and is not mandatory. Defendant cannot be faulted for failing to terminate the employment of the general contractor or any other contractor for it may well have been that such termination would have delayed the project even longer due to the necessity of obtaining a replacement.

For these reasons, we are of the opinion that plaintiff's sole remedy under its contract with defendant for the delays in construction encountered on this project was to obtain an extension of time. For this reason, we are of the opinion that the majority of the arbitrators made an error in law in awarding damages to plaintiff.

## ORDER

Now, May 8, 1973, defendant's petition to modify the arbitrators' award is granted. The award of the arbitrators is modified by striking therefrom the award of damages to plaintiff, against defendant, in the amount of $32,000 for delay of construction.